Low *v.* The People.

SUPREME COURT.    Albany General Term, December, 1848
*Harris, Watson* and *Wright,* Justices.

EPHRAIM M. Low, pl'ff in error *vs.* THE PEOPLE, def'ts in error.

The statute makes "bank notes" and not "bank bills" the subject of larceny. But where the property stolen was called in the indictment "bank bills," it was held sufficient, bank notes being commonly called and known as bank bills.

It is not sufficient, in an indictment, to describe the property stolen as "sixty dollars in bank bills, current money, of the value of sixty dollars," or "bank bills, being current money of the State of New York, of the value of sixty dollars." The number of bills stolen should be stated.

On the trial of an indictment for larceny, alleged to have been committed in stealing bank notes, the jury must be satisfied from the evidence of their genuineness; and where the court refused to charge that the prisoner ought to be acquitted, unless the evidence showed their genuineness, it was held to be erroneous, and the prisoner having been convicted, the conviction was reversed and a new trial ordered.

Error from the Oyer and Terminer of Ulster county, where Low was convicted of grand larceny.    The indictment contained five counts, describing the property as follows: 1st count, one pocket book of the value of 50 cents, and $60 in bank bills, current money, of the value of $60.    2d count, one pocket book of the value of 50 cents, and (6) six bank bills of the

(*a*) See the King vs. Ward, 2 Ld. Raymond, 1461; 1 Strange, 12; 1 Salk. 342; 2 East P. C. 862.

value of ten dollars each, current money of the State of New
York. 3d count, one pocket book of the value of 50 cents;
two bank notes of the value of $10 each; three bank notes of
the value of $5 each; three bank notes of the value of $3 each;
two bank notes of the value of $2 each, and three bank notes
of the value of $1 each. 4th count, one pocket book of the
value of 50 cents; fifteen notes for the payment of money, com-
monly called bank bills, of the value of $5 each, and fifteen
other notes for the payment of money, commonly called bank
bills, of the value of $3 each. 5th count, one pocket book of
the value of 50 cents, and its contents, to wit, bank bills, being
current money of the State of New York, of the value of $60.

The evidence tended to show that in August, 1847, Brodhead
Van Leuven, the complainant, received some $74 in bank bills
from one Brower, $60 of which was in what one Stratton called
current and $14 uncurrent. Van Leuven employed Stratton to
count the bills. He put the $60 in one side of his pocket book
and the $14 in the other side. That day Van Leuven and the
prisoner went in company to Rondout. Drank there a number
of times; stopped on their way back to Kingston at one Myers
and drank there; was at Myers' about sundown. At Myers'
Van Leuven had his pocket book out and exhibited two rolls of
bank bills; one roll Dubois, one of the witnesses, testified was
Kingston money. He wanted a bill changed from another roll
of $13 or $14. Both Van Leuven and Low were intoxicated,
and were noisy. From Myers' they went in company to Low's
oyster cellar, in Kingston; Van Leuven got some oysters, took
out his pocket book to pay for them, laid it on the counter with
the current money in it; Low was on the opposite side of the
counter. Whilst unfolding the uncurrent money to pay for the
oysters, Low said that he had change; he took the change
from his pocket and paid for the oysters. At this time the
pocket book and its contents were missed, and were not seen
or heard of afterwards by Van Leuven.

There was no evidence as to the denomination of the bank
bills alleged to have been in the pocket book, or upon what
bank they were, whether of this state or not. The counsel for

the prisoner requested the court to charge the jury, 1st. That the prosecution were bound to prove the bills to have been of the particular description stated in the indictment, and in the absence of such proof the prisoner should be acquitted upon the charge of stealing the money. 2d. That they should not find the prisoner guilty of stealing the money unless the evidence showed the genuineness of the bills, or that they were upon banks of this state. Whereupon the court, as to each of said propositions, refused so to charge; but decided that the proof was sufficient under the first and last counts of the indictment, to which refusal and decision the counsel for the prisoner excepted. The jury found the prisoner guilty.

*E. Cook,* for prisoner.

*R. F. Macauley,* (District Attorney,) for the people.

*By the Court,* WRIGHT, J.—The counsel for the prisoner requested the court to charge the jury that the prosecution were bound to prove the bills to have been of the particular description stated in the indictment, and in the absence of such proof the prisoner should be acquitted upon the charge of stealing the money. This the court refused, and decided in substance, although the bill of exceptions does not very aptly express the meaning of the court, that the first and fifth counts of the indictment were good, and that the proof given was applicable to them. Those counts charged the stealing of bank bills generally, of the value of $60. In the second, third and fourth counts, the number and denomination of the bills and notes were particularly described, but without any averment as to what banks issued them, or whether they were foreign or of this state. Indeed, in none of the counts is it averred that the bills alleged to have been stolen were issued by any bank of this state.

The conviction under the decision and charge of the court was had under the first and fifth counts of the indictment, and if they are bad it can not be sustained. Property, as bills and

notes, was not the subject of larceny at common law. It is made so by statute. It is provided that the felonious taking and carrying away the personal property of another, of the value of more than twenty-five dollars, shall be grand larceny; and that if the property stolen, consist of any bond, covenant, note, bill of exchange, draft, order or receipt, or any evidence of debt, or any public security issued by the United States, or by this state, or of any instrument whereby any demand, right or obligation shall be created, increased, released, extinguished or diminished, the money due thereon or secured thereby, and remaining unsatisfied, or which in any event or contingency might be collected thereon, or the value of the property transferred or affected thereby, as the case may be, shall be deemed the value of the article so stolen. (2 *R. S.* 679, §63, 66.) The property described in the first and fifth counts of the indictment, as stolen, is bank bills. In this respect it is urged that the indictment is bad, as bank bills are not *eo nomine* embraced in the descriptions of property made the subject of larceny by statute.

As a general rule, where an offence is created by statute, the indictment should aver such facts and circumstances as bring the case within the definition of the statutes; and in describing the offence, it is always expedient to pursue strictly the words of the statute. Formerly the courts of England, *in favorem vitæ*, were sometimes inclined to listen to and countenance very nice distinctions on the subject. A British statute made the stealing of "bank notes" a felony. In the case of *The King* v. *Craven*, (2 *East P. C.* 601,) the indictment charged the defendant with stealing "a certain note, commonly called a bank note." It was holden bad because it did not follow the description of property in the statute. Our statute describes as property, the subject of larceny, a bank note, a bill of exchange, a draft, order, or any evidence of debt, or any instrument whereby any demand, right or obligation is created. A bank bill is not mentioned, obviously for the reason that what is commonly called a bank bill, is in legal effect a bank note, and possesses the technical characteristics of a note and not of a

Low *v.* The People.

bill. In this case, had the indictment described the property as *bank notes*, the objection would have been obviated. To steal a bank *note* is an offence under the statute. Bank notes are ordinarily called bank bills, and are universally understood to be obligations for the payment of money on demand, passing from hand to hand as money. In common signification, when we speak of a bank bill, we allude to what is called in the statute a note, and which is issued and circulated as money; of that I think courts may take judicial notice. When an indictment, therefore, charges the stealing of *bank bills,* it is in effect the charge of larceny under the statute. The distinction would be quite too nice at this day, when the forfeiture of life does not follow a conviction, to hold that because the precise words in the statute, though the property is the same, has not been used in the indictment, the objection is fatal.

The first and fifth counts describe the property stolen as " sixty dollars in bank bills, current money of the value of sixty dollars," and " bank bills, being current money of the State of New York, of the value of sixty dollars." This, it appears to me, is too general and without precedent. The counts contain no statement as to the number of bills stolen, whether two or twenty; and number is a part of the description applicable to chattels, and should not be omitted. (*Archbold's Crim. Plead.* 45; 2 *Russell on Crimes,* 107; 2 *Hale,* 183; *Barb. Crim. Law,* 168, 169.) In an indictment for stealing bank notes, it is not necessary to set out the instruments *verbatim.* They may be described in a general manner, as a bank note; nor is it necessary to state the value of each note; but the number must be stated, and then it is sufficient to state the value in the aggregate. In respect to number, the indictment should be certain. Archbold says: " When personal chattels are the subject of an offence, as in larceny, they must be described specifically by the name usually appropriated to them, and the number and value of each species or particular kind of goods stated. (*Arch. Cr. Pl.* 49; 2 *Hale,* 182, 183.) The omission to state any number of bills stolen, may be technical; but in an indictment for

felony, when the liberty of the citizen is placed in jeopardy, there should be certainty and precision. The prosecution should at least be called upon, to a reasonable extent, to specifically apprise the defendant of the charge against him. But the doubt that I entertain on this point, is whether the defect can be urged after conviction, on a bill of exceptions. That it would have been fatal on demurrer is clear; and it is possible it might have been successfully urged on a motion in arrest of judgment. But whether advantage may be taken of it in the manner now resorted to, is perhaps immaterial to decide, as there is a remaining point in the case conclusive against the judgment.

The counsel for the prisoner further requested the court to instruct the jury that they should not find the prisoner guilty of stealing the money, unless the evidence showed the genuineness of the bills, or that they were upon banks of this state, this the court refused to charge, and, as the bill of exception states, " decided that the proof was sufficient under the first and last counts of the indictment." It was certainly necessary before the jury could convict of any thing more than petit larceny, for stealing the pocket book, that they should be satisfied that the bills alleged to have been taken had been issued by banks having an existence, and that such bills were genuine. In *The People* v. *Caryl,* (12 *W. R.* 547,) the prisoner was indicted for stealing within this state a number of bank bills, purporting to have been issued by the *Bank of Upper Canada,* and by the Hancock Bank of the State of Massachusetts. No proof was adduced on the trial, by the public prosecutor, to prove the existence of the banks and the genuineness of the bills. The court were of opinion that at least *prima facie* evidence ought to have been given that there were such banks in existence, and that the bills were genuine. In *The People* v. *Johnson,* (4 *Denio R.* 364,) it was held that there must be some evidence to show that the bills were genuine. In the present case, had not the point been distinctly made to the court, it might, perhaps, have been inferred that the genuineness of the bills was not to be contested before the jury. But it was made in explicit terms, and I can not understand the decision of the

court in any other way, than as refusing to charge that the prisoner should be acquitted of stealing the bills, though the evidence failed to satisfy the jury that they are genuine. The attention of the court having been called to it, the question of the genuineness of the bills being one for the jury, ought to have been submitted to them, and a refusal to do so was erroneous.

Judgment reversed, and new trial ordered.